James Victor SALEM, Plaintiff-Appellee,

v.

UNITED STATES LINES COMPANY, Defendant-Appellant.

No. 385, Docket 26875.

United States Court of Appeals
Second Circuit.

Argued May 10, 1961.

Decided June 9, 1961.

Rehearing Denied en Banc
Aug. 7, 1961.

Certiorari Granted Oct. 9, 1961.

See 82 S.Ct. 62.

Walter X. Connor, New York City (Kirlin, Campbell & Keating, and James P. O'Neill, New York City, on the brief), for appellant.

Robert Klonsky, Brooklyn, N. Y. (Herman N. Rabson, New York City and Di-Costanzo, Klonsky & Sergi, Brooklyn, N. Y., on the brief), for appellee.

Before FRIENDLY and SMITH, Circuit Judges, and WATKINS, District Judge.[*]

WATKINS, District Judge.

This is an appeal from an action wherein plaintiff-appellee sought recovery for injuries sustained while he was employed as an able bodied seaman on a vessel owned and operated by defendant-appellant. The action was based on allegations of negligence, unseaworthiness, and right of maintenance. Defendant appeals from a judgment against it totalling $123,968, plus costs, made up of the following elements: (1) A general jury verdict for $110,000 damages for personal injuries due to negligence and/or unseaworthiness; (2) A maintenance award by the court for $13,968, including $8,760 for three years future maintenance, and $5,208 for past maintenance. Appeal is also taken from the order denying defendant's motion to set aside the verdict, for judgment for defendant *non obstante veredicto,* and for a new trial.

We feel this case must be reversed on two grounds: first, because of an erroneous and prejudicial instruction given by the trial judge; and second, because of a lack of evidence to support the trial judge's finding of three years future maintenance.

Appellee was an able bodied seaman on board the luxury liner S.S. United States. His principal duty on board was to act as lookout. He reported for duty at 12:00 midnight on the night of February 16, 1958, to his post in the crow's nest. The crow's nest is a lookout post located within the ship's radar tower, a hollow aluminum mast which supports the ship's radar screens. At various levels within the radar tower, are platforms, reached by a steel ladder running from the bottom of the radar tower to the top, a distance of some sixty-five feet. The platform which led to the crow's nest was some thirty-one feet above the deck. There were five electric lights within the tower, two below the crow's nest level, one approximately at the level of the crow's nest, and two higher in the tower.

When plaintiff reported for duty at midnight, all the lights were out except the one at the crow's nest level. He left the crow's nest at 2:00 a. m. on Monday, February 16, having stood two hours of his four-hour watch, and having been relieved at this time by a fellow seaman, one Richards. The accident complained of occurred when he was returning to duty at 2:30 a. m. At that time there was still only one light burning in the tower, the one at the level of the crow's nest. Plaintiff ascended the ladder to the platform at the level of the crow's nest and stepped with his left foot from the ladder to the platform. As he was carrying over the right foot, the remaining light in the tower went out, and the area was in complete darkness. His testimony is not clear as to whether he fell in the process of bringing his right foot onto the platform, or whether the fall occurred after he had both feet on the platform. At any rate, he fell, striking his head on the ladder, and his back on the edge of the platform. He saved himself from a further fall down through the tower by holding on to the ladder rungs. He then called for help, and Richards came to his aid from the crow's nest. Richards pulled him up to a sitting position on the platform, and asked him three or four times, "Can you hold yourself until I make a phone call?" Plaintiff finally answered, "Yes, I guess so." Richards then placed plaintiff on a narrow ledge with both feet dangling into the open space, with his arm around a pipe casing. Richards left to enter the crow's nest to telephone the bridge. Plaintiff then became dizzy, called out for help again, but was not heard, and fell for the second time, losing consciousness. He fell to a point about eight feet

[*] United States District Judge for the Northern and Southern Districts of West Virginia, sitting by designation.

below the crow's nest platform, where he was rescued by men with flashlights.

The complaint contained four causes of action, based on:

1. The negligence of defendant and its employees (Jones Act, 46 U.S.C.A. § 688).

2. Negligence on the part of Richards, in that, while attempting to rescue plaintiff, he caused plaintiff to have a second fall.

3. The unseaworthiness of the· vessel.

4. Recovery for past and future maintenance.

The trial judge instructed the jury among other things that their verdict should be for the plaintiff, "if you find the defendant was negligent in failing to provide railings or other safety devices." Due exception was taken to this and other portions of the charge.

■ There was no evidence of any kind in the record to support the view that railings or other safety devices could feasibly be constructed, or that failure to provide them constituted negligence or made the ship unseaworthy. Plaintiff and a seaman, Richards, testified that there was no railing inside the tower at the crow's nest level of the tower. However, there was testimony that there was a radar enclosure or casing which plaintiff could hold to, and did grasp with his left hand, as he stepped onto the platform. Plaintiff also testified that there was a shelf or stiffener encircling the inside of the tower about shoulder high as plaintiff stood on the platform. The tower enclosure varied from 36 to 48 inches in width so that plaintiff could have reached each side of the wall of the tower from the platform by raising his arms. There was no expert testimony that proper marine architecture required the additional provision of railings or other safety devices on such a ladder or platform enclosed within a tower leading to a crow's nest. Should the jury, under these conditions, have been permitted to decide whether

proper marine architecture required railings or other safety devices?

In two recent cases, this court has held that a jury should not be permitted to speculate on such matters in the absence of expert evidence. In Martin v. United Fruit Co., 2 Cir., 1959, 272 F.2d 347, a case involving a seaman injured aboard ship while attempting to open an air port, the plaintiff contended on appeal that the trial judge had erred in failing to present an issue to the jury. In a *per curiam* opinion, affirming judgment for defendant, at page 349, this court stated:

> "Finally, we reject the plaintiff's contention that the trial court committed error in not permitting the jury to determine whether the placement of the hinge at the bottom of the deadlight was an improper method of ship construction so as to make the vessel unseaworthy. Surely this is a technical matter in which an expert konwledge of nautical architecture is required in order to form an intelligent judgment. Since no expert testimony was introduced, it was correct to exclude this matter from the jury's consideration."

The case of Fatovic v. Nederlandsch-Ameridaansche Stoomvaart, Maatschappij, 2 Cir., 1960, 275 F.2d 188, involved a seaman injured when struck in the hip by a cargo boom while working as a stevedore on the S.S. Veendam. The trial judge charged the jury that there were five separate theories upon which the jury might find the ship unseaworthy. One of these theories was the absence of a stopping arrangement to prevent the boom's swinging against the kingpost. This court, in reversing judgment for the plaintiff, found that there was no evidence in the record to support this theory of unseaworthiness, and, at page 190, stated:

> "In any event, the question was one of nautical architecture about which jurors lack the knowledge to

form an intelligent judgment in the absence of expert testimony. Martin v. United Fruit Co., 2 Cir., 272 F.2d 347. Since there was no expert testimony on the matter, it should not have been submitted to the jury."

There is another error in this case which we feel requires reversal, and that is the finding of the court as to future maintenance. The trial judge properly withheld the question of maintenance from the jury in compliance with the conditions expressed by this court in Bartholomew v. Universe Tankships Inc., 2 Cir., 279 F.2d 911. There is no dispute here as to past maintenance, the sum of $5,208 being agreed upon by both parties. The trial court awarded future maintenance computed on the basis of a period of three years at $8 per day. The lump sum award for future maintenance was $8,760.

The only evidence pertaining to a period of future maintenance, or the duration thereof, is the testimony of two doctors. Dr. Graubard testified to the effect that, at the time of the trial, plaintiff was still disabled and not capable of any work as a seaman. Dr. Kaplan testified to the effect that the likelihood of improvement was remote, and that it may be that plaintiff would get worse and require more specific therapy. There was no evidence that plaintiff required three years future treatment. Plaintiff's doctors did not testify as to probable duration of future treatment, if any. We do not think there was sufficient evidence upon which to base a finding of a three year future maintenance period.

The two principal Supreme Court cases on the problem are Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 655, 82 L.Ed. 993, and Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850. In the Calmar case, the trial court had awarded a lump sum payment for maintenance to a seaman suffering from Buerger's Disease. The payment was based on the life expectancy of the seaman as the disease was confidently predicted to be incurable. The key language of the court is as follows:

"The seaman's recovery must therefore be measured in each case by the reasonable cost of the maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained."

The language of the court, "immediate future" and "definitely ascertained" would militate in favor of a rather restricted area in which payments for future maintenance might properly be awarded.

The result in Farrell further strengthens this interpretation. There the court held that maintenance and cure payments would only be required until such time as the seaman was *cured or was found to be incurable.* (Emphasis added.) The extreme uncertainty surrounding either or both of these possibilities would appear to make any award for future maintenance improper in this case. For instance, in the instant case, there is, in addition to the possibility of plaintiff's full recovery from his back injuries, the further possibility that his not-so-latent psychotic condition might get the better of him at any time. If he became permanently insane, even if that condition were reliably linked to the accident, his maintenance payments would cease. Whatever the respective merits of a lump sum payment as against successive law suits in the ordinary legal setting, the Supreme Court seems to have indicated that no payments should be made for future maintenance and cure. Justice Jackson strongly hinted at this result in Farrell, at page 519 of 336 U.S., at page 711 of 69 S.Ct.:

"The Government does not contend that if Farrell receives future treatment of a curative nature he may not recover in a new proceeding the amount expended for such treat-

ment and for maintenance while receiving it."

There does not appear to be any sufficient basis, by opinion evidence or otherwise, for the finding that three years is the period reasonably to be expected for Salem to reach maximum improvement.

Defendant makes two other points which we feel should be discussed here since this case is being remanded for a new trial:

1. A claim of absolute bar to recovery because of plaintiff's negligence.

2. The contention that defendant was not responsible for Richards' actions in attempting to rescue plaintiff.

■ Concerning the first point, the trial judge charged the jury that as a seaman, plaintiff does not assume the risk of an unsafe place to work and cannot be blamed for working in an unsafe place. There was no error in this instruction. Darlington v. National Bulk Carriers, Inc., 2 Cir., 157 F.2d 817. A seaman assumes no risk of employment even of obvious dangers when he acts under the orders of a superior officer. Becker v. Waterman Steamship Corp., 2 Cir., 179 F.2d 713. As to the issue of whether plaintiff should have called someone to replace the burned out light bulbs, the jury apparently resolved it in plaintiff's favor, and it is not proper for this court to retry factual issues where there is evidence to sustain the finding below. There is such evidence in this case.

As to point number two, we feel that Richards' employer, defendant herein, was responsible for the actions of Richards in attempting to rescue plaintiff. See Judge Soper's opinion in Harris v. Penn. R. R. Co., 4 Cir., 50 F.2d 866, 868; Buckeye Steamship Co. v. McDonough, 6 Cir., 200 F.2d 558, certiorari denied 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357, affirming D.C., 103 F.Supp. 473. Defendant cites the case of Robinson v. Northeastern Steamship Corp., 2 Cir., 228 F.2d 679, to the effect that a seaman, voluntarily assisting another seaman in distress is not acting within the scope of his employment, unless the

rescue is authorized by the employer. That case is readily distinguishable from the case at hand. In the Robinson case, an intoxicated seaman, returning to his vessel from shore leave, was run over by a locomotive within a customs compound adjacent to the dock. The locomotive and the customs compound were not owned or controlled by the shipowner. The court in that case was careful to limit its holding to the facts; where the accident occurred not on the ship, but on land. We do not think the law in that case applies to rescue situations occurring aboard ship where the seaman being rescued is injured while performing his duties.

■ We think the correct law applicable to this case to be that the shipowner owes an obligation to effect prompt and proper rescue to a seaman injured in the performance of his duties aboard ship, and that a seaman who undertakes such a rescue is acting within the scope of his employment, the employer being liable for his actions if the rescue operation is conducted negligently.

Since we have found prejudicial error in the charge to the jury, we conform to the language in Fatovic v. Nederlandsch-Ameridaansche Stoomvaart, supra:

"Since we cannot determine from the general verdict brought in by the jury whether they relied upon a proper or improper claim of unseaworthiness in reaching their decision, we must reverse the judgment and order a new trial."

The judge could have insulated the error in the charge recited by submitting special interrogatories, as is frequently done in such cases, but he chose not to do so.

In view of our conclusion that there must be a new trial, we believe it unnecessary to discuss the many other errors complained of.

Reversed and remanded for a new trial consistent with the foregoing opinion on the issues of negligence, unseaworthiness, and future maintenance. Affirmed

as to past maintenance award in the sum of $5,208.

**J. JOSEPH SMITH, Circuit Judge** (concurring in part and dissenting in part).

I concur in the reversal of the award for future maintenance and cure, for the reasons stated in the opinion. I also agree with the opinion on assumption of risk and responsibility for the fellow seaman's rescue attempt.

From so much of the judgment as reverses the jury award for unseaworthiness or negligence, I respectfully dissent. As the majority points out, the crow's nest was more than thirty feet above the ship's deck with access to the outdoor lookout post obtainable through an internal radar tower. The straight ladder ascending the radar tower faced 180° away from the platform leading out to the crow's nest; reaching the platform entailed the rather dangerous maneuver of transferring one foot at a time from the ladder while turning the body completely around. There was before the jury sufficient evidence, both from oral testimony and from photographs, for it to visualize the platform on and from which plaintiff fell and to determine whether some railing or hand hold in addition to the structures present was reasonably necessary for the protection of a seaman passing from the ladder to the platform in the swaying mast.

I do not believe that either the Martin or the Fatovic case stands for the blanket proposition that any and all theories of negligence and/or unseaworthiness which might touch on the broad

field of "naval architecture" may be properly submitted to a jury only if supported by expert testimony. Here the potential danger was fairly obvious and a jury should be perfectly competent to decide whether the handholds furnished were sufficient to discharge the owner's duty to provide his seamen with a safe place to work. Such a determination hardly requires expert knowledge of naval architecture,[1] such as may be required to determine proper construction of deadlights, or the feasibility of a stopping arrangement to prevent a boom from swinging against a kingpost. I would approve the charge on railings or other devices and affirm the award for personal injuries and past maintenance.

## On Petition for Rehearing en Banc.

The petition for rehearing en banc is denied.

CLARK and J. JOSEPH SMITH, Circuit Judges, dissenting.

WATERMAN, Circuit Judge votes to deny with the following statement:

"An examination of the whole record convinces me that the full retrial ordered by the panel majority is desirable. However, with Judge SMITH 'I do not believe that either the Martin or the Fatovic case stands for the blanket proposition that any and all theories of negligence and/or unseaworthiness which might touch on the broad field of "naval architecture" may be properly submitted to a jury only if supported by expert testimony.'; and I find no reversible error in the failure at the former trial to so charge the jury."

1. It is somewhat difficult to conceive in what way the construction of railings on an indoor platform would not be "feasible" from the standpoint of naval architecture. If such were the case, however, it would seem more sensible to have the defendant introduce such evidence.