Melanie ABEL, a minor, by her father and natural guardian, Raymond J. Abel, and Raymond J. Abel, Individually, Plaintiffs,

v.

J. C. PENNEY CO., INC., a Delaware Corporation, Defendant.

Melanie ABEL, a minor, by her father and natural guardian, Raymond J. Abel, and Raymond J. Abel, Individually, Plaintiffs,

v.

SIMPLICITY PATTERN CO., INC., Defendant.

Melanie ABEL, a minor, by her father and natural guardian, Raymond J. Abel, and Raymond J. Abel, Individually,

v.

M. LOWENSTEIN & SONS, INC., a corporation, Defendant.

Nos. 4–75–civ–175, 4–76–civ–204 and 4–76–civ–454.

United States District Court, D. Minnesota, Fourth Division.

May 27, 1980.

Thomas J. Lyons, St. Paul, Minn., for plaintiffs.

John J. Killen, Jr., Johnson, Fredin, Killen, Thibodeau & Seiler, Duluth, Minn., for defendant J. C. Penney & Company.

Robert T. White, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, Minn., for defendant Simplicity Pattern Company, Inc.

Richard D. Allen, Minneapolis, Minn., for defendant M. Lowenstein & Sons, Inc.

RENNER, District Judge.

The above-captioned case comes before the Court pursuant to the following pretrial motions: (1) of defendant Simplicity Pattern Company, Inc., (hereinafter "Simplicity") to determine that Fed.R.Evid. 407 prevents any testimony regarding changes that it made in its warnings or labelings after January 4, 1975; (2) of Simplicity to determine that the Flammable Fabrics Act does not apply to it and for striking said cause of action from the complaint; and (3) of plaintiffs for submission of their claim for punitive damages to the jury.

Based upon the briefs and arguments of counsel and the entire record herein, the Court issues the following Memorandum Order.

## I.

This is a products liability case in which plaintiffs seek both compensatory and punitive damages for injuries sustained when plaintiff Melanie Abel's pajama nightgown caught fire in January of 1975. The pajamas were a gift from her grandmother who had obtained the material and a pattern and had sewn the pajamas herself. Plaintiffs allege liability of J. C. Penney Company, the retailer of the cloth used to make the pajamas, M. Lowenstein & Sons, the manufacturer of the cloth, and Simplicity, the manufacturer of the pattern, under theories of strict liability in tort, negligence and breach of warranty.

Plaintiffs' case against Simplicity is premised on Simplicity's suggestion that cotton flannelette was an appropriate fabric to use with its pattern and its failure to warn concerning the highly flammable nature of the fabric.

## II.

Defendant Simplicity Pattern Company, Inc., moves the Court, in essence, for an order striking plaintiffs' strict liability claim as to it on grounds that a pattern manufacturer does not come within the purview of the requirements of the Flammable Fabrics Act, 15 U.S.C. §§ 1191 *et seq.*, or the common law doctrine of strict liability. Restatement of Torts 2nd, § 402A; *McCormack v. Hankscraft Co., Inc.*, 278 Minn. 322, 154 N.W.2d 488 (1967).

Regulations promulgated by the Consumer Product Safety Commission (hereinafter "CPSC") under the Act require that warnings shall be given where a product does not meet Standard for the Flammability of Sleepwear, DOC FF 3–71. Title 16 C.F.R. § 1615.31(b) reads, in pertinent part:

"(d) Where any fabric or related material intended or promoted for use in children's sleepwear is sold or intended for sale to the ultimate consumer for the purpose of conversion into children's sleepwear, each bolt, roll, or other unit shall be labeled with the information required by this section. * * *

"(5) Where items required to be labeled in accordance with paragraphs (b)(2), (3), and (4) of this section are marketed at retail in packages, and the required label is not readily visible to prospective purchasers, the packages must also be prominently, conspicuously, and legibly labeled with the required information.

"(6) Samples, swatches, or specimens used to promote or effect the sale of items subject to the Standard shall be labeled in accordance with this section with the information required by this section, except that such information may appear on accompanying promotional materials attached to fabric samples, swatches, or specimens used to promote the same of fabrics to garment manufacturers. * * * * "

Simplicity argues that the standards do not apply to pattern manufacturers who simply suggest possible fabrics for use with a pattern even though among those listed is

one subject to the Flammable Fabrics Act standards. Plaintiff, on the other hand, contends that the pattern is a "related material intended or promoted for use in children's sleepwear" or, alternatively, "samples, swatches, or specimens used to promote or effect the sale of items subject to the Standard".

In deciding this issue, the Court must give great deference to the interpretation of the statute and regulation given by the administrative agency charged with its enforcement. *United States v. Rutherford*, 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979); *Minnehaha Creek Watershed District v. Hoffman*, 597 F.2d 617 (8th Cir. 1979). The May 18, 1978 opinion of W. Harry Garber, Assistant Associate Executive Director for Legal and Technical Review or the Directorate of Compliance and Enforcement of the CPSC, that "neither the Flammable Fabrics Act nor the Standard for the Flammability of Children's Sleepwear Sizes 0 through 6X apply to patterns intended for use by a home sewer for making sleepwear items" is, therefore, persuasive authority for Simplicity's position.

Furthermore, while deference is constrained by the Court's obligation to honor the clear meaning of a statute, as revealed by its language, purpose or history, *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the statutes and regulations at issue are plain and unambiguous on their face, and the court need not delve further into their legislative history to discover their meaning. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

In construing the regulation, the Court is not limited to the dictionary definition of the terms involved, for the Act and regulations themselves provide some guidance. For example, 15 U.S.C. § 1191(g) defines "related material" as "paper, plastic, rubber, synthetic film, or synthetic foam which is intended for use or which may reasonably be expected to be used *in* any product as defined in [subsection] (h)." (Emphasis added.) Subsection (h) defines

"product" as "any article of wearing apparel or interior furnishing." "Item" is "any product of children's sleepwear, or any fabric or related material intended or promoted for use in children's sleepwear." 16 C.F.R. §§ 1615.1(c) and 1615.31(a)(3).

Plaintiff does not contend that Simplicity's pattern is an article of wearing apparel or an interior furnishing, or that the pattern itself was meant to be physically embodied in the final product.

However, in order to be bound by the sleepwear standards of the Flammable Fabrics Act the manufacturer or seller of a product must have produced its product for use "in" sleepwear. Thus, a plain reading of the statutes and regulations indicates that neither Congress nor the CPSC intended to require pattern manufacturers to warn of the dangers of using cotton flannelette.

Simplicity cannot, therefore, be held liable on the basis of violation of the Standard for Flammability of Children's Sleepwear, DOC FF 3–71.

Simplicity does not contend that this conclusion bars imposition of strict liability as a matter of law, and it is clear that application of the common law doctrine of strict liability is not inconsistent with any provisions of the Flammable Fabrics Act. *See* 15 U.S.C. § 1203; *Raymond v. Riegel Textile Corp.*, 484 F.2d 1025, 1027 (1st Cir. 1973). It does contend, however, that the doctrine is inapplicable where, as here, the defect complained of is the mere failure of a pattern manufacturer to warn of a defect in a fabric suggested for use along with others. The Court agrees.

Section 402A of the Restatement of Torts 2nd states:

"(1) One who sells any product in a defective condition unreasonably dangerous to the users or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

a. The seller is engaged in the business of selling such a product, and

b. It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in sub-section (1) applies although .

a. The seller has exercised all possible care in the preparation and sale of his product, and

b. The user or consumer has not bought the product from or entered into any contractual relation with the seller."

Strict liability for product-related injuries is imposed by the law upon manufacturers and sellers of the injury-causing products because of the public policy that consumers should be protected from the inevitable risks of bodily harm created by mass production and complex marketing conditions. Eliminating the necessity of· proving negligence or privity of contract

"imposes the cost of injury resulting from a defective product upon the maker, who can both most effectively reduce or eliminate the hazard to life and health, and absorb and pass on such costs, instead of upon the consumer, who possesses neither the skill nor the means necessary to protect himself adequately from either the risk of injury or its disastrous consequences." *McCormack v. Hankscraft Co., supra,* 154 N.W.2d at 500.

■ Under Minnesota law, a manufacturer has a duty to warn users of its products of all dangers of which it has actual or constructive knowledge associated with those products. Failure to warn renders the manufacturer strictly liable in tort. *Karjala v. Johns-Manville Products Corp.,* 523 F.2d 155, 158 (8th Cir. 1975); *Frey v. Montgomery Ward & Co., Inc.,* Minn., 258 N.W.2d 782, 786 (1977); *Magnuson v. Rupp Mfg., Inc.,* 285 Minn. 32, 38, 171 N.W.2d 201, 205 (1969). However, there are no cases holding a manufacturer to be liable for injury caused by a defective product manufactured by someone else and in which its own product is not embodied. And for good reason.

It is one thing to hold someone liable for placing an injury-producing defective product on the market. It is quite another thing to hold someone liable for suggesting that another's product may be one of several suitable for use in conjunction with one's own product. As in the case at hand, the manufacturer and retailer can absorb and pass on the cost of the injuries which their products cause. They are also in a much better position than the pattern manufacturer to reduce or eliminate the hazard created.

Section 402A recognizes this. It does not impose liability or "one who sells or suggests the use of", but merely "one who sells". Congress and the CPSC also recognized this by placing the duty to warn of untreated flannelette's flammability on the manufacturer and seller of the fabric itself, not upon a pattern manufacturer. Thus, Simplicity's failure to warn of the fabric defect does not constitute a defect in the pattern it sold.

■ Plainly, if plaintiffs are to be compensated for their injuries by Simplicity, they must convince the jury that Simplicity was negligent, i. e., they must show that, because of its involvement in the promotion of fabric, and of flannelette in particular, Simplicity knew of the danger, had a duty to warn the purchasers of its patterns of that danger, failed to so warn, and thereby contributed to plaintiffs' injuries. The law does not allow a shortcut in this instance. There is no basis for imposing liability on defendant Simplicity Pattern under the Flammable Fabrics Act or the doctrine of strict liability in tort.

III.

In light of this holding, it becomes apparent that Simplicity's motion to exclude evidence of subsequent remedial measures is also well grounded.

■ Plaintiffs seek to submit evidence that subsequent to the accident here at issue, Simplicity placed a warning concerning the dangers of cotton flannelette on its patterns. It seeks admission of this evi-

dence only to prove that the pattern was defective. There is no issue as to feasibility of precautionary measures, ownership or control.

Rule 407, Fed.R.Evid., states:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

While it is true, as plaintiffs assert, that the doctrine of strict liability does not include elements of negligence or other culpable conduct and that Rule 407 is therefore inapplicable in strict liability cases, see *Farner v. Paccar, Inc.*, 562 F.2d 518 (8th Cir. 1977); *Robbins v. Farmers Union Grain Terminal Association*, 552 F.2d 788 (8th Cir. 1977), plaintiffs' case against Simplicity Pattern is no longer grounded on strict liability in tort but rather on negligence alone. Thus, the alleged defect in the pattern is no longer relevant. Since plaintiffs' only other possible motive for admission of the evidence would be to prove negligence, Rule 407 comes into play and forces the Court to exclude it.

### IV.

Plaintiffs move the court for submission of the issue of punitive damages to the jury, asserting that they will show at trial that defendants J. C. Penney and M. Lowenstein & Sons were fully cognizant by 1966 of the continuous problem with cotton flanelette fires, particularly those involving children. Plaintiffs claim that by 1968 M. Lowenstein & Sons was aware of commercially feasible flame retardant processes on the market and, in fact, treated much of its flannelette with them. They claim all defendants were aware of the high flammability of untreated flannelette, pointing out that by 1972 defendant M. Lowenstein &

Sons had been sued for apparel fires several times.

■ Under Minnesota law, punitive damages are available when the plaintiff has shown that the defendant acted willfully, wantonly or in reckless disregard of the rights of others. They are an exception to the rule of compensatory damages and require more than a showing of mere wrongful conduct. *See Benson Cooperative Creamery Association v. First District Association*, 276 Minn. 520, 151 N.W.2d 422, 427–8 (1967); *Anderson v. International Harvester Company of America*, 104 Minn. 49, 116 N.W. 101, 102 (1908); *Curtis v. Peerless Ins. Co.*, 299 F.Supp. 429, 433 (D.Minn.1969); *Dixon v. Northwestern National Bank of Minneapolis*, 276 F.Supp. 96, 104 (D.Minn.1967).

If the requisite showing can be made, however, a jury may in its discretion award punitive damages in any tort case. *Anderson, supra*, 116 N.W. at 102. The Minnesota Supreme Court has specifically held that punitive damages may properly be awarded in a strict liability action. *Gryc v. Dayton-Hudson Corp.*, slip op. at 9 (Minn. May 23, 1980). The Court, therefore, rejects any argument that *Roginsky v. Richardson-Merrill, Inc.*, 378 F.2d 832 (2nd Cir. 1967), precludes punitive damages as a matter of law in all product liability cases but notes the improbability of success in meeting the burden of proof.

At this time, however, the Court has not heard the evidence and is, of course, unaware of inferences to be logically drawn from it. Therefore, the motion will be held in abeyance pending its renewal by plaintiffs after they have established a *prima facie* case upon which they can premise their claim for punitive damages. If at that time the proper proof has been presented, the Court will allow the plaintiffs to submit their damage case. In the meantime, the jury will not be informed of plaintiffs' claim for punitive damages.

Upon the foregoing,

IT IS ORDERED that:

(1) Plaintiffs' claim against Simplicity Pattern Company based upon violation of the Flammable Fabrics Act, 15 U.S.C. §§ 1191 *et seq.*, and upon the theory of strict liability in tort for failure to warn are stricken from the complaint.

(2) Plaintiffs may not submit evidence to the jury regarding changes that Simplicity Pattern Company made in its warnings or labelings after January 4, 1975.

(3) Plaintiffs' motion for submission of their claim for punitive damages to the jury is to be held in abeyance pending receipt of evidence concerning their substantive claims and renewal of the motion at such time as plaintiffs' feel they have established a *prima facie* case for such damages. Until such time, no mention shall be made to the jury of the claim for punitive damages.