Timothy L. HALL, Plaintiff-Appellee,

v.

AMERICAN STEAMSHIP COMPANY, Defendant-Appellant.

No. 80–3815.

United States Court of Appeals, Sixth Circuit.

Argued April 22, 1982.

Decided Aug. 30, 1982.

Rehearing Denied Oct. 6, 1982.

Paul D. Galea, Foster, Meadows & Billard, Detroit, Mich., Douglas N. Barr, Thompson, Hine & Flory, Cleveland, Ohio, for defendant-appellant.

Leonard C. Jaques, The Jaques Admiralty Law Office, Detroit, Mich., for plaintiff-appellee.

Before ENGEL, Circuit Judge, CELEBREZZE and BROWN,[*] Senior Circuit Judges.

BAILEY BROWN, Senior Circuit Judge.

Timothy Hall, appellee, filed an action against American Steamship Company for injuries sustained while serving aboard the CHARLES E. WILSON, a vessel owned and operated by American Steamship. The action was based on two separate grounds for recovery: a negligence claim based on the Merchant Marine Act, 46 U.S.C. § 688 *et seq.* (1976) (Jones Act), and a claim under the doctrine of unseaworthiness, which imposes upon every shipowner a nondelegable duty to keep and maintain the ship in a seaworthy condition at all times. After a jury trial Hall received a verdict and judgment of $300,000 and costs. For the reasons stated herein, we vacate and remand for a new trial.

The injury occurred on May 17, 1979 during a trip from Escanaba, Michigan on Lake Michigan to Trenton, Michigan near Detroit. The CHARLES E. WILSON had been loaded with taconite (iron ore round pellets), and some spilled pellets remained on the deck of the vessel. If the pellets were not removed, they would have caused hazardous walking conditions. Consequently, the first mate, Vincent Smith, as was the practice, ordered wheelsman Dennis Beaudre and a deckhand to hose down the deck. Smith also told Beaudre that, if the seas became too rough, Beaudre was to "get off the deck" but did not admonish him to pass along this order to his relief. The weather was stormy and spray was coming over the side and on the deck.

Hall relieved Beaudre at the end of his watch and the work had not been completed. The instructions of the first mate to hose the deck were passed on to Hall, but Beaudre did not pass the word to leave the deck if the weather became too rough. The weather conditions continued to be rough with spray coming up and over on the starboard side and the vessel was rolling in the wind. The injury to Hall occurred when a large wave washed over the side and knocked Hall against a hatch cover and onto the deck. Hall suffered a serious injury.

On August 25, 1980, immediately prior to trial, Hall moved *in limine* to strike American Steamship's affirmative defense of contributory negligence.[1] The defendant's po-

---

* Circuit Judge Brown retired from regular active service under the provisions of 28 U.S.C. § 371(b) on June 16, 1982, and became a Senior Circuit Judge.

1. American Steamship in essence was seeking to assert the partial defense of comparative negligence. In an action based on negligence under the Jones Act or on the doctrine of unseaworthiness, the defense of contributory neg-

sition was that Hall was an experienced seaman who knew the risk involved in remaining on deck in such weather conditions and who had the opportunity to request relief from his duties. Hall's argument in support of his motion was that a seaman may not be contributorily negligent for carrying out orders that result in his own injuries, even if he recognizes possible danger. The court agreed with Hall and granted the motion *in limine.*

During the plaintiff's proof at trial American Steamship objected to a question presented to witness Beaudre concerning the change of procedure following Hall's injuries regarding the hosing of the deck:

Q: Do you recall, did the hosing after the incident to Tim occurred, did it continue or was it ceased?

MR. HAMILTON: Objection.

THE COURT: Approach the bench.

(Discussion ensued off the record at side bar.)

THE COURT: There is an objection to the question. State the basis.

MR. HAMILTON: The basis to my objection is, if I understand counsel, he intends to have the witness testify that after the injury to Mr. Hall there was a change in the hosing procedure, and it is my position that it is improper to show subsequent changes.

MR. JAQUES: Your Honor, I predicate my position on Rule 407 of the Federal Rules of Evidence. I do not offer this testimony to prove negligence. I offer subsequent remedial measures, changes, to show unseaworthiness as it relates to the condition at the time of the incident of accident. And I would expect, of course, that the Court instruct the jury at the appropriate time as to the limited purpose of such testimony.

THE COURT: Well, Rule 407 deals specifically with whether or not remedial or corrective measures taken after an accident or an incident is admissible to estab-

lish the probable negligence of a defendant. It may be offered, however, for other reasons other than for establishing probable negligence. And if this is the basis on which this question is put to this witness, it's an exception to Rule 407 and I'll permit it.

MR. HAMILTON: May I speak?

THE COURT: You may take your exception.

MR. HAMILTON: All right.

(Thereupon side bar proceedings ended.)

THE COURT: Would you repeat the question, please? (Reporter read back the last question asked of the witness.)

A: It was ceased by the First Mate.

Q: What was his name?

A: Vincent Smith.

\*     \*     \*     \*     \*     \*

Q: With regard to hosing down circumstances of weather conditions as you described, characterized as being nasty, . . . would you indicate whether there has been a change in procedure since the incident of accident to Tim in regard to hosing?

A: Yes, there has. We don't hose at night anymore, and when it's bad, they don't have us out there hosing anymore.

During the argument to the jury for the plaintiff, references were made to the post-accident change in the hosing policy. The district court instructed the jury on the issue as follows:

You are instructed that remedial or corrective measures taken after an event which if taken previously would have made the event less likely to occur, the subsequent or remedial or corrective measures are not to be considered by you as proving negligence or establishing culpable conduct. You may consider this event or these events only as they may relate to ownership, control or the feasibility of precautionary measures.

---

ligence, if established, "results in an allocation of fault on a comparative basis rather than a bar to recovery." *Tolar v. Kinsman Marine Transit Co.,* 618 F.2d 1193, 1195 (6th Cir. 1980)

(citing *Socony-Vacuum Oil Co. v. Smith,* 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265 (1939)).

American Steamship objected to the instruction on the ground that the evidence of the remedial acts should not have been admitted. Hall objected to the instruction on the ground that it did not state that the evidence could be considered to show an unsafe condition at the time of the incident constituting a breach of warranty by American Steamship to provide a seaworthy vessel. The jury found for Hall and assessed damages in the amount of $300,000.[2]

American Steamship thereafter filed a motion pursuant to Rule 59 of the Federal Rules of Civil Procedure for a new trial, alleging *inter alia* that the district court erred by (1) striking the defendant's affirmative defense of contributory negligence and denying the defendant the opportunity to present evidence with respect to Hall's contributory fault, and (2) permitting Hall to introduce evidence regarding the change in the policy of hosing the deck. The motion for a new trial was denied on November 18, 1980, and this appeal followed.

## I.

American Steamship asserts on appeal that the striking of its affirmative defense of contributory negligence prior to trial resulted in substantial prejudice and constituted reversible error. Specifically, American Steamship argues that because of the court's ruling it was not allowed to present evidence and to argue to the jury that: (1) Hall was an experienced seaman, (2) as an experienced seaman Hall knew what his duties and responsibilities were with respect to his own safety, and (3) any order, whether direct or indirect, carries with it a caveat or proviso that if carrying out the order places the seaman in a position of danger, the seaman has a right, and in fact a duty, to register a protest or objection with his superior officer.[3]

In *Williams v. Brasea, Inc. and Vessel Ciapesc I*, 497 F.2d 67 (5th Cir.), *cert. denied*, 423 U.S. 906, 96 S.Ct. 207, 46 L.Ed.2d 136 (1974), the court said, citing *Darlington v. National Bulk Carriers*, 157 F.2d 817 (2d Cir. 1946):

> Indeed, a seaman may not be contributorily negligent for carrying out orders that result in his own injury, *even if he recognizes probable danger.*

497 F.2d at 73 (emphasis added). *See also Salem v. United States Lines Co.*, 293 F.2d 121, 125 (2d Cir. 1961), *aff'd in part, rev'd in part*, 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962) ("A seaman assumes no risk of employment even of obvious dangers when he acts under the orders of a superior officer"); *Pedersen v. Diesel Tankers, IRA S. BUSHEY, Inc.*, 280 F.Supp. 421, 424 (S.D.N.Y.1967) (plaintiff was not contributorily negligent because in obeying orders he did not assume the risk); *Taylor v. Packer Diving and Salvage Co.*, 342 F.Supp. 365, 371 (E.D.La.1971), *aff'd*, 457 F.2d 512 (5th Cir. 1972) (table) (a seaman does not assume the risk of lawful order even if it involves risk of injury; nor can defense of assumption of risk be applied under the label of "contributory negligence" in such a situation).

American Steamship contends, however, that the defense upon which it relied and could support was the defense of contributory negligence and not assumption of the risk. In *Tolar v. Kinsman Marine Transit Co.*, 618 F.2d 1193 (6th Cir. 1980), this court examined the distinction between assumption of risk and contributory negligence in the maritime setting. With regard to assumption of risk, the court noted that "[a] seaman may not be denied recovery because he proceeds in an unsafe area of

**2.** Because the jury returned a general verdict, it is unclear whether American Steamship's liability was premised on the negligence claim or on the doctrine of unseaworthiness, or both.

**3.** Although the district court struck the contributory negligence defense before trial, American Steamship was able to get into the trial record at least some of the facts upon which it hoped to rely in support of this affirmative defense. Wheelsman Beaudre was allowed over objection to testify on cross-examination that he could have complained to the first mate if he felt he was in danger. (App. 39). Hall testified that he was an experienced seaman. In addition, Vincent Smith, the first mate, was allowed to testify on direct examination by American Steamship that crew members may question orders that are given. (App. 243).

the ship . . . in absence of a showing that there was a safe alternative available to him." 618 F.2d at 1195. As for contributory negligence, the court held that "the defense of contributory negligence requires evidence of some negligent act or omission by the plaintiff other than his knowledgeable acceptance of a dangerous condition." *Id.* at 1196 (citing *Rivera v. Farrell Lines, Inc.*, 474 F.2d 255, 257–58 (2d Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973)). *Accord, Akermanis v. Sea-Land Service, Inc.*, 521 F.Supp. 44, 49 (S.D.N.Y.1981). American Steamship did not and does not claim that Hall acted in any manner, aside from exposing himself to the conditions, that was negligent. Hence, even if Hall had the option to cease hosing down the deck if conditions became too rough, his performance of this task in a non-negligent manner could amount only to assumption of risk. Since American Steamship did not and does not contend that Hall was guilty of negligence in the manner in which he was washing down the deck, the district court did not err in striking the defense of contributory negligence. The issue as presented was one of law as to which the district court ruled correctly.

## II.

The second issue on appeal concerns the introduction of evidence by Hall regarding the change in the policy of hosing the deck. Rule 407 of the Federal Rules of Evidence provides and prohibits the introduction of evidence of subsequent remedial measures in the following circumstances:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

As heretofore set out, *supra* at 1064, Hall offered this evidence and the district court admitted it, as Hall's counsel stated, "to show unseaworthiness as relates to the condition at the time of the incident . . .".[4] This was the theory that Hall's counsel argued to the jury. The question at this point is, then, whether proof of the change in policy whereby the deck was no longer washed down in stormy weather was admissible to show that the condition under which Hall worked at the time of his injury was an unseaworthy condition.

Since there was no dispute as to the physical and weather conditions at the time Hall was injured, even if the change of policy were relevant as proof of these prior conditions, the policy change could not, under the terms of Rule 407, be admitted for such purpose. We further conclude that this proof of a change of policy was not admissible to show that the undisputed condition under which Hall worked was an unseaworthy condition, for Rule 407 proscribes the admission of such proof to "prove negligence or *culpable conduct*" (emphasis added). In this situation, the operation of a vessel with an unseaworthy condition as claimed by Hall, although a species of strict liability, would be "culpable conduct" within the meaning of the Rule for it is such conduct that would impose liability upon American Steamship under general maritime law. In any case, the reasons for excluding the evidence as proof of negligence or culpable conduct (however defined) apply here.

We recognize that the federal courts have divided on the question whether Rule 407 proscribes proof of after-the-fact corrective measures where the claim is one of strict liability. Holding that such corrective measures cannot be shown to support strict liability are *Cann v. Ford Motor Co.*, 658

---

4. An unseaworthy condition "need not be a permanent fixture of the vessel but may be merely a transitory or momentary unfitness." *Hogge v. SS Yorkmar*, 434 F.Supp. 715, 736 (D.Md.1977) (citing *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) (a slippery ship's rail caused by the presence of fish gurry and slime)).

F.2d 54 (2d Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982); *Werner v. Upjohn Co.,* 628 F.2d 848 (4th Cir. 1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981); and *Oberst v. International Harvester Co.,* 640 F.2d 863 (7th Cir. 1980). Decisions to the contrary are *Unterburger v. Snow Co.,* 630 F.2d 599 (8th Cir. 1980); *Farner v. Paccar, Inc.,* 562 F.2d 518 (8th Cir. 1977); *Robbins v. Farmer's Union Grain Terminal Ass'n,* 552 F.2d 788 (8th Cir. 1977); and *Abel v. J. C. Penney Co.,* 488 F.Supp. 891 (D.Minn.1980), *affirmed,* 660 F.2d 720 (8th Cir. 1981). We agree with the reasoning of the Fourth Circuit in *Werner, supra* :

> The rationale behind Rule 407 is that people in general would be less likely to take subsequent remedial measures if their repairs or improvements would be used against them in a lawsuit arising out of a prior accident. By excluding this evidence defendants are encouraged to make such improvements. It is difficult to understand why this policy should apply any differently where the complaint is based on strict liability as well as negligence. From a defendant's point of view it is the fact that the evidence may be used against him which will inhibit subsequent repairs or improvement. It makes no difference to the defendant on what theory the evidence is admitted; his inclination to make subsequent improvements will be similarly repressed.

Although, as stated, the district court admitted the evidence of the change in policy to show an unseaworthy condition at the time of Hall's accident and injury, it actually instructed the jury in terms of Rule 407. Thus the jury was instructed that it could not consider the evidence on issues of negligence or culpable conduct and could consider it only on the issue of ownership or control or feasibility of precautionary measures. It could therefore be argued that the limiting charge to the jury in any event corrected any error. (Hall does not make this argument. His argument is, as indicated, the straightforward one that the evidence was admissible to show an unseaworthy condition.) This argument, however, is without merit because American Steamship was not defending on the basis of lack of ownership or control or on the unfeasibility of precautionary measures. Rule 407 specifically provides that evidence of subsequent precautionary measures can be admitted to show ownership or control or the feasibility of such measures only "if [ownership or control or feasibility is] controverted."

We cannot say that the admission of this evidence of post-accident corrective measures was harmless.

The judgment of the district court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

## ORDER DENYING PETITION TO REHEAR

In his petition to rehear, appellee Hall argues that the court's opinion incorrectly states and relies on the proposition that there was no dispute as to the weather conditions at the time Hall was injured. Hall cites the opening statement of American Steamship's counsel to the jury (not, as counsel for Hall agrees, included in the appendix) in support of this contention. Hall goes on to argue that, therefore, this court was in error in holding that proof of later corrective measures should not have been admitted.

In this connection, the opinion states (slip at 8):

> Since there was no dispute as to the physical and weather conditions at the time Hall was injured, even if the change of policy were relevant as proof of these prior conditions, the policy change could not, under the terms of Rule 407, be admitted for such purpose.

All the proof, including a picture taken at the time and including defendant's proof, showed that the conditions were stormy at the time of the accident. It was undisputed that a wave came over the side, struck Hall, and caused his injury. Thus there was ·no dispute, as the case developed, of the physical condition at the relevant time and what

caused Hall's injury. Moreover, the district court properly charged the jury (App. 321–322) that defendant would be liable for an unseaworthy condition no matter "how long or short a time the condition of unfitness may have existed . . . ." Thus there was no dispute, as indicated in the court's opinion, not only as to the operative physical facts that caused the injury, but also as to the facts that would determine whether an unseaworthy condition existed at that time. Still further, we are of the view that proof that defendant later ceased hosing down under stormy conditions would not be proof as to the physical conditions that existed when Hall was injured; it would only be proof that, if the conditions were stormy when Hall was injured, it was dangerous to hose down under such conditions and the vessel was unseaworthy under such conditions.

In the petition to rehear, Hall also argues that the court incorrectly decided that proof of later corrective measures should not have been admitted since, Hall argues, such proof is indeed admissible to show that the undisputed physical facts that existed at the time of the accident constituted an unseaworthy condition. As indicated in the opinion, we disagree.

Hall argues that the admission of evidence of corrective measures was, in any event, harmless. As stated in the opinion, we cannot say, based on the entire record, that it was harmless and therefore we disagree with Hall's contention.

It is Ordered that the petition to rehear be and it is hereby denied.