**FATHER A and Mother A, individually and on behalf of Minor A, Respondents,**

v.

**Alvin Darold MORAN, Appellant.**

**No. C8–90–1799.**

Court of Appeals of Minnesota.

May 7, 1991.

Richard C. Taylor, Dwain E. Fagerlund, Dickel, Johannson, Taylor & Rust, P.A., Crookston, Jeffrey R. Anderson, St. Paul, and Steven M. Fuller, Bemidji, for respondents.

Richard N. Sather, Sather Law Office, Thief River Falls, and Earl P. Gray, St. Paul, for appellant.

Considered and decided by SHORT, P.J., and KALITOWSKI and POPOVICH\*, JJ.

## OPINION

KALITOWSKI, Judge.

In this action for damages arising from appellant Alvin Darold Moran's sexual abuse of Minor A, appellant challenges the jury award of loss of consortium damages, and the trial court's allocation of a portion of the jury award of punitive damages, to the parents of Minor A.

## FACTS

Appellant Alvin Darold Moran had been a friend and the landlord of Minor A's parents for many years. During the years 1979 to 1985, when Minor A was between the ages of 6 and 12, appellant repeatedly sexually abused her. Appellant's batteries included touching Minor A's genitals and breasts, inserting his finger in her vagina, and taking nude photographs of her. Minor A estimated that during the course of these years, appellant touched her on the breasts over 200 times, and "in the private area between the legs" over 50 times. Appellant coerced Minor A into keeping these contacts a secret, until fall of 1987 when appellant's acts became public as a result of his sexual abuse of other minor females.

Appellant pleaded guilty to criminal charges regarding sexual conduct involving Minor A and two other female minors. Father and Mother A, individually and on behalf of Minor A, subsequently commenced this civil action against appellant based on appellant's batteries of Minor A.

---

\* Retired chief justice, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn.Stat. § 2.724, subd. 3 (1990).

On June 12–14, 1988, a civil trial was held before a jury.

Evidence was presented of the effect of appellant's acts on Minor A. Minor A suffered emotional and behavioral difficulties, as reflected in her mood swings, appetite fluctuations, and an occasionally severe sense of distress. At about the time of appellant's criminal sentencing, she attempted suicide by aspirin ingestion. Minor A received counseling to help resolve the emotional difficulties associated with appellant's abuse. However, despite these difficulties, Minor A was able to participate in school activities, maintain high grades, and work during the summer and while attending school. The record reflects that Minor A increased her working hours subsequent to the abuse.

The record also reflects evidence of the effect that appellant's acts and the minor child's consequent problems had on the child's parents, Father and Mother A. Evidence was presented concerning the previous relationship between appellant and the parents. The record reflects that Minor A's relationship with Father A was strained after the disclosure of appellant's acts. The record also reflects that Father and Mother A were concerned about their daughter's difficulties arising from appellant's abuse, and therefore sought counseling for Minor A.

At the conclusion of the civil trial, the jury returned its verdict on special interrogatories. The jury concluded that appellant committed a battery on Minor A; that this battery directly caused Minor A's injury and Father and Mother A's "loss of consortium"; and that appellant acted with willful indifference to the rights and safety of respondents and/or others. The jury determined that Minor A should receive $46,500 for medical expenses and counseling, and $120,000 for mental distress. The jury also determined that Father and Mother A should receive $26,500 for their parental "loss of consortium." Finally, the jury awarded punitive damages of $50,000.

The trial court labeled the parents' damages on the verdict form as "loss of consortium." However, the jury was instructed to determine the amount of the parents' damages according to Civil JIG 175. This JIG is based on traditional common law and allows parents' recovery for pecuniary losses associated with injury to the child. Specifically, Civil JIG 175 allows recovery for medical expenses and loss of the value of the child's earnings/services until the age of majority.

The trial court subsequently allocated the punitive damages of $50,000, one third each to Minor A, Father A, and Mother A. Judgment was therefore entered for Minor A in the amount of $183,166.67; and for her parents in the amount of $59,833.33.

Appellant moved the trial court for a new trial, and the trial court denied the motion by order of July 19, 1990, and filed judgment. Appellant filed a notice of appeal on August 9, 1990.

## ISSUES

I. Is the jury award to Father and Mother A for loss of consortium based on sexual abuse of their child allowable under Minnesota law?

II. Is the trial court's allocation of punitive ˙ damages to Father and Mother A based on sexual abuse of their child allowable under Minnesota law?

## ANALYSIS

### I.

■ Appellant Alvin Darold Moran argues that an award of damages to parents for loss of their child's society and companionship as a result of the sexual abuse of their minor daughter is not available in Minnesota, and therefore the jury award of $26,500 to Father and Mother A for loss of consortium must be reversed. Respondent Father and Mother A argue that evidence in the record of the "irreparable harm" caused to both Minor A and her parents supports the jury award of damages to the parents.

We recognize the genuine loss and psychological suffering caused to the parents of a sexually abused minor, and find respondents' argument to have strong sym-

pathetic appeal. However, in accordance with Minnesota law, we are compelled to agree with appellant.

■ Under traditional Minnesota common law, parents may recover damages based on injury to their child only for medical expenses, and for loss of the child's earnings, contributions, and services that the parents would have received until the child reached majority age. *See Eichten v. Central Minn. Coop. Power Ass'n of Redwood County*, 224 Minn. 180, 195, 28 N.W.2d 862, 871 (1947); *Dentinger v. Uleberg*, 171 Minn. 81, 83, 213 N.W. 377, 377 (1927). The Minnesota Supreme Court has explicitly denied a cause of action for loss of consortium in the parent-child context. In a child's action for damages based on injury to the father that rendered him quadriplegic, the court noted the logical and sympathetic appeal of the child's argument, but concluded:

> [i]n spite of the common elements of the spousal and parental consortium claims, i.e. love, comfort, and companionship, * * *
>
> *    *    *    *    *    *
>
> [s]trong policy reasons * * * argue against extension of liability to loss of consortium of the parent-child relationship.

*Salin v. Kloempken*, 322 N.W.2d 736, 740 (Minn.1982).

■ In response to appellant's motion for a new trial, the trial court stated:

> The Court will concede that the evidence presented by the parents for their damages was not strong, but there was evidence presented concerning what affect [sic] the minor child's problems had on the parents and what affect [sic] the defendant's acts, including the previous relationship between defendant and the parents, had upon the parents.

However, under Minnesota law, damages are not available to parents for mental and emotional distress based on a tortfeasor's injury to their child unless the parents themselves are in the physical zone of danger. *Stadler v. Cross*, 295 N.W.2d 552 (Minn.1980).

We recognize that basing parents' recovery for injury to the child on loss of the child's earnings and/or economic contributions has been found to be an outmoded concept, suited to the agrarian society of the last century in which it developed but inappropriate in modern times. *See Fussner v. Andert*, 261 Minn. 347, 352–53, 113 N.W.2d 355, 358–59 (1961) (pecuniary loss test for parents' recovery under wrongful death statute is outdated and unduly restrictive). We also note that some jurisdictions have recognized a parents' cause of action to recover damages for their psychological injury resulting from sexual abuse of their child. *See Croft v. Wicker*, 737 P.2d 789 (Alaska 1987); *Schurk v. Christensen*, 80 Wash.2d 652, 497 P.2d 937 (1972); *see also Morgan v. Foretich*, 846 F.2d 941 (4th Cir.1988); *Bishop v. Callais*, 533 So.2d 121 (La.Ct.App.1988), *cert. denied*, 536 So.2d 1214 (La.1989). *But see H.L.O. v. Hossle*, 381 N.W.2d 641 (Iowa 1986); *Brauninger v. Ducote*, 381 So.2d 1246 (La.Ct.App.1979), *superseded by statute as stated in Ferguson v. Burkett*, 454 So.2d 413 (La.Ct.App.1984); *Lauver v. Cornelius*, 85 A.D.2d 866, 446 N.Y.S.2d 456 (1981). However, after a careful review of the relevant precedents, we conclude that such an expansion of parents' recovery is not consistent with Minnesota law.

In this case, the jury was instructed according to Civil JIG 175. Civil JIG 175 is based on Minnesota's traditional common law, and therefore instructs that the parents' damages be based on medical expenses and the loss of the child's earnings, contributions, and services. The evidence in this case does not support an award of any of these types of losses to Father and Mother A. Evidence was presented that although Minor A suffered emotional and psychological distress as a result of appellant's abuse, her employment income did not decrease, and may have, in fact, increased. No evidence was introduced concerning the parents' loss of Minor A's services. The jury award to Minor A included damages for medical and counseling expenses, so that an additional award to Father and Mother A for medical expenses would constitute double recovery.

A jury's answer to a special verdict will be set aside when it is palpably contrary to the evidence. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984). In this case, there is no evidence in the record to support a finding of Father and Mother A's loss of Minor A's earnings and/or services, and the award to Minor A includes recovery for medical expenses. We therefore reverse the jury award of $26,500 to Father and Mother A.

## II.

■ Appellant next argues that the trial court's allocation of a portion of the punitive damages award to Father and Mother A was erroneous. Appellant argues that because the trial court determined that the jury award of $50,000 in punitive damages should be allocated one third each to Minor A, Father A, and Mother A, the jury award of punitive damages is arbitrary and should be reversed.

The purpose of punitive damages is to both punish and deter a tortfeasor whose act is willful or malicious according to the gravity of the act. *Thompson v. Estate of Petroff*, 319 N.W.2d 400, 408 (Minn.1982); *Melina v. Chaplin*, 327 N.W.2d 19, 20 n. 1 (Minn.1982); *see* Minn.Stat. § 549.20, subd. 1 (1988). The award of punitive damages is within the jury's discretion. *See Abel v. J.C. Penney Co.*, 488 F.Supp. 891, 896 (D.Minn.1980), *aff'd*, 660 F.2d 720 (8th Cir. 1981). The jury in this case heard a vigorous cross-examination of appellant concerning his admissions during the criminal trial that he knew his touching of the minor females was wrong. In light of such evidence in the record and the nature of appellant's acts, we conclude that the jury did not abuse its discretion in awarding $50,000 in punitive damages.

■ The general rule is well-accepted, however, that there must be a tort committed against the recovering party to support an award of punitive damages. *See* 59 Am.Jur.2d *Parent and Child* § 106 (1987) (parents' recovery based on injury negligently inflicted on child is purely compensatory and punitive damages are generally not allowed); 25 C.J.S. *Damages* § 124 (Supp.1990) (punitive damages may not be recovered in a suit by parents for injury to the child). While no Minnesota case explicitly states who may recover punitive damages, support exists for the general rule's rationale that there must be some policy limits on punitive damages. *See Jacobs v. Farmland Mut. Ins. Co.*, 377 N.W.2d 441, 444–45 (Minn.1985) ("to avoid punitive damages being a loose cannon on the legal deck, courts prefer not to allow punitive damages unless the plaintiff has [suffered compensable harm]"). Thus, consistent with the majority of other jurisdictions and policy expressed in Minnesota case law, we conclude that parents may not recover punitive damages based on injury to their child.

Appellant Moran committed a tort against Minor A. He did not commit an independent tort against the parents of Minor A. We therefore conclude that the trial court's allocation of punitive damages to Father and Mother A was erroneous. We affirm the jury award of punitive damages, but reverse the trial court's allocation of punitive damages. The jury award of $50,000 in punitive damages is appropriately granted only to Minor A.

## DECISION

Under Minnesota law, parents' recovery based on injury to their child does not include damages for loss of consortium. Since the record in this case contains no support for a finding of parents' loss of Minor A's earnings and/or services, the jury award of $26,500 to Father and Mother A is reversed.

Punitive damages may not be recovered by parents based on injury to their child. Therefore, we affirm the jury award of punitive damages in the amount of $50,000, but modify the award to eliminate the allocation of a portion of the punitive damages to Father and Mother A. Finally, we remand this matter to the trial court for entry of judgment consistent with this opinion.

Affirmed in part as modified, reversed in part, and remanded for entry of judgment.