Michael TOLAR, Plaintiff-Appellee,

v.

KINSMAN MARINE TRANSIT COMPA-
NY, Defendant-Appellant.

No. 78–3054.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 11, 1980.

Decided April 8, 1980.

Creighton E. Miller, Miller, Stillman, Callaghan & Bartel, Cleveland, Ohio, for defendant-appellant.

Merritt W. Green, II, Green, Lackey, Newcomer & Harris, Toledo, Ohio, for plaintiff-appellee.

Before WEICK, LIVELY and JONES, Circuit Judges.

LIVELY, Circuit Judge.

In this Jones Act case the shipowner appeals from an award of $110,040 to a crew member who was injured while on duty. The case was tried before the district court without a jury. The opinion of the court contained findings that the defendant was negligent and the vessel unseaworthy, that the plaintiff was not contributorily negligent, and that the plaintiff was totally and permanently disabled from returning to his former occupation by reason of his injuries. We affirm.

### I.

The plaintiff was third assistant engineer on a Great Lakes steamer, The Chicago Trader. His duty station was the engine room where he stood the 8 to 12 watch each morning and evening. On September 25, 1974 the ship was tied up to a dock of the Superior Cement Works near Duluth, Minnesota. About 9:00 a. m. on that day the chief engineer directed the plaintiff to make some adjustments to a steam winch on the boat deck which was being used to hoist groceries aboard The Chicago Trader from a supply boat alongside. Maintenance of winches on deck is one of the duties of the engine crew. While greasing one of the winches, plaintiff noticed that the deckhands were having trouble getting the groceries aboard, and he proceeded to the area where the work was being performed to help out.

The problem, as described by the plaintiff, was that the hoisting cable ran so close to the side of the ship that the attached grocery basket scraped against the ship's plates. The basket was tipping over, and groceries were in danger of falling into the water. The plaintiff grabbed the cable and pushed it away from the ship so the basket could be raised without coming into contact with the ship's side. The basket was being lifted by a steam winch which retracted the cable. There was a bridle attached to the basket and the cable was connected by a hook on top of the bridle. The cable ran back to the winch through a sheave (pulley) which was rigged to a piece of angle iron above the deck. The sheave was within an arms length above the plaintiff's head. While the plaintiff was holding the cable, the winch retracted it, and plaintiff's left thumb was carried into the sheave. The thumb was fractured and badly lacerated.

The Chicago Trader was equipped with a supply davit which was available for loading groceries. While this davit was unusable at the time of the injury because its electric motor had been removed, it was constructed so that when the davit was extended the hoisting cable was held away from the ship's side as it was raised and lowered. By contrast, the angle iron to which the sheave was attached at the time of plaintiff's injury extended no more than 2½ feet horizontally beyond the deck, and this was not far enough to prevent baskets being hoisted from scraping the sides.

The plaintiff was hospitalized for one week in Duluth. He then returned to his home in Louisiana. From the time of his return home, he was seen periodically by an orthopedic surgeon in Natchez, Mississippi. This surgeon, Dr. Ball, testified that the fractures were healing satisfactorily when he first saw plaintiff on October 17, 1974 and that the healing process continued satisfactorily until he discharged the plaintiff on January 17, 1975. He felt the plaintiff

had received the maximum benefits from medical treatment at that time. In his opinion, the plaintiff was left with a 50% permanent limitation to his ability to grip objects between his left thumb and other fingers and a limitation generally in work that required fine manual dexterity. Though Dr. Ball felt that plaintiff was capable of being gainfully employed after January 17, 1975, he was not familiar with the details of a third assistant engineer's duties and made no determination of occupational disability.

## II.

### A.

■ The defendant contends that the district court's finding that the defendant was negligent and the vessel unseaworthy was clearly erroneous. There is no merit to this argument. Defendant first maintains that it owed no duty to the plaintiff because he had no business helping with the grocery hoisting operation. While it is true that an engineer is not required to assist in taking on supplies except those for the engine force, nevertheless plaintiff was a member of the crew and on duty when he saw the groceries "all about to spill out" into the water. A crew member who pitches in and tries to help will not be penalized on the theory that an otherwise unseaworthy condition visits no liability on the shipowner because the injured crew member has not been assigned to the particular task he is performing at the time of his injury. Plaintiff was ordered by his superior to work on the winch which was not performing satisfactorily. While doing so he discovered another problem in the hoisting operation and tried to help. It would give force to a technicality in a way completely at odds with the general purpose and goals of the Jones Act to deny plaintiff recovery on the basis of this argument.

■ The second portion of this argument relates to the finding of unseaworthiness. It is undisputed that if the supply davit had been operating there would have been no problem of the grocery basket scraping the side of the ship. The "jury-rig" which was substituted for the davit created the problem because it was not constructed so as to hold the hoisting cable a sufficient distance from the side of the ship. The witness Leonard C. Adams, called by the defendant, was the third mate on The Chicago Trader who was operating the winch when the plaintiff was injured. He described the substitute apparatus as "a precarious hook-up."

The finding that the defendant was negligent and the vessel unseaworthy is not clearly erroneous.

### B.

■ The district court held that the proof presented a question of assumption of risk, but not of contributory negligence. Since assumption of risk is not a defense to a seaman's claim for injuries aboard ship, the district court ruled against the defendant on its affirmative defense. The defendant argues on appeal that by equating its defense of contributory negligence with assumption of risk the district court has effectively abolished the defense of contributory negligence. It is settled that contributory negligence is a valid defense in an action of this kind, though it results in an allocation of fault on a comparative basis rather than a bar to recovery. *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265 (1939).

■ The distinction between assumption of risk and contributory negligence in a maritime setting has not always been clearly understood. A seaman may not be denied recovery because he proceeds in an unsafe area of the ship or uses an unsafe appliance in absence of a showing that there was a safe alternative available to him. In an oft-cited case the court wrote, "Had an alternative, safe route been available to Smith, his deliberate choice of a course known to be unsafe could possibly have indicated contributory fault but mere knowledge of the unseaworthy condition and use of the ladder in the absence of a showing that there was an alternative is not contributory negligence." *Smith v.*

*United States,* 336 F.2d 165, 168 (4th Cir. 1964) (citations deleted); *see DuBose v. Matson Navigation Co.,* 403 F.2d 875, 878 (9th Cir. 1968). *Cf. Dixon v. Penn Central Co.,* 481 F.2d 833 (6th Cir. 1973), an action under the Federal Employers' Liability Act, whose rules and decisions govern Jones Act litigation. *Dixon v. Serodino, Inc.,* 331 F.2d 668 (6th Cir. 1964). One court has stated the rule, "no risk that can be reasonably controlled by the ship owner is assumed by the seaman." *Reyes v. Vantage S. S. Co.,* 558 F.2d 238, 244 (5th Cir. 1977). The risk of injury by using the jury-rig hoist could easily have been controlled by providing the preferred, and safe, alternative of an operative davit. Thus, the fact that the plaintiff elected to help the deckhands use the unsafe hook-up was no more than an assumption of a known or obvious risk and did not constitute contributory negligence.

To determine whether plaintiff was guilty of contributory negligence we must focus on his actions after he assumed the risk of working with the defective rig since the defense of contributory negligence requires evidence of some negligent act or omission by the plaintiff other than his knowledgeable acceptance of a dangerous condition. *Rivera v. Farrell Lines, Inc.,* 474 F.2d 255, 257–58 (2d Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973). The burden of proving that the plaintiff failed to exercise due care is on the defendant. *Nolan v. Greene,* 383 F.2d 814 (6th Cir. 1967); *Mason v. Mathiason Tanker Industry, Inc.,* 298 F.2d 28, 32 (4th Cir.), *cert. denied,* 371 U.S. 828, 83 S.Ct. 23, 9 L.Ed.2d 66 (1962).

Third Mate Adams, who witnessed the accident, testified that if the plaintiff had held the bridle of the basket rather than the cable his thumb would not have gone up into the sheave. However, there was no showing that the bridle attached to the grocery basket was within the plaintiff's reach at the time his thumb was carried up into the sheave. At this time the basket, and bridle, could have been well below the level of the deck. The plaintiff's concern was to hold the cable far enough away from the ship's side to prevent the basket from being upset, spilling the groceries "into the drink." So far as the record discloses the only means at hand for accomplishing this was to push the cable out from the ship. Under these circumstances a miscalculation by the plaintiff as to how high he might safely place his hand on the cable would not constitute contributory negligence as a matter of law. *Cf. Schlemmer v. Buffalo, Rochester & Pittsburgh R. Co.,* 205 U.S. 1, 14, 27 S.Ct. 407, 409, 51 L.Ed. 681 (1906). The defendant did not sustain its burden of proving that the plaintiff failed to use due care. The findings of the district court on the defense of contributory negligence are not clearly erroneous.

### III.

The defendant takes vigorous exception to the district court's computation of damages. The defendant maintains there was no medical proof that the plaintiff was totally disabled from performing the duties of a third assistant engineer and that plaintiff's own contemporary statements were that he felt able to return to his usual occupation. The entire award, except for $3,000 ascribed to pain and suffering, was based on the finding that plaintiff's injuries "permanently disabled him from continuing his career as a marine engineer." The district court assumed that plaintiff would work through the 1982 Great Lakes shipping season (at which time he would be 68 years old) before retiring.[1] The court also assumed that plaintiff's pay would remain about the same as it was at the time of the accident. The lost wages to the time of trial and from that time to the end of the plaintiff's work-life in 1983 were reduced by an amount which the court found the plaintiff could have earned if he had taken a land-based engineering job rather than

---

1. This assumption is supported by Department of Labor statistics and provisions of a union contract, all in evidence.

returning to his Louisiana farm. The court also included the pension which the plaintiff would have earned if he had worked until 1983. The lost future earnings and pension benefits were reduced to present values by applying a 4% interest rate.

The critical question is whether the finding of permanent disability for work as a marine engineer is supported by the record. The plaintiff testified that his thumb remained numb all the time, was affected by cold weather and was painful when "it gets knocked around." Though he is right-handed, plaintiff testified he did not have enough grip in his left hand to hold nails or screws and that manipulating wires would be a slow process. He testified that after his release by Dr. Ball he did not feel he was able to work as a marine engineer. This opinion related primarily to the fact that he was required to use tools such as wrenches, screw drivers, hammers and chisels aboard ship.

On cross-examination the plaintiff testified he could do about 50% of the duties of a third assistant engineer at the time of trial. There was no proof on behalf of the defendant either that plaintiff could have performed more than one-half the duties of a third assistant engineer or that a person with such a limitation would be hired or retained in that position. The defendant's efforts were directed to showing that the plaintiff agreed to return to a ship of the defendant in 1976, and later decided not to do so; and that the plaintiff indicated on an Ohio unemployment compensation form in 1975 that he was able to go to work. The district court found these earlier indications of the plaintiff's opinion of his ability to return to work of little probative value.

Dr. Ball, the treating physician in Natchez, testified in his deposition that the limitations which plaintiff experienced from his injury aboard The Chicago Trader are permanent. He stated that he would expect the grip and strength of plaintiff's left hand to be less than normal after the injury. He also testified that the following conditions or problems would be consistent with the injury suffered by the plaintiff:

an aching and discoloration when exposed to cold weather; a numbness at the top or end of the thumb; a problem in attempting to use fine wire, nails or screws; difficulty in using wrenches while working with pipes in the engine room and in climbing ships' ladders; near impossibility of using a chisel because of the pain which results when a hammer strikes it. All of this testimony related to duties of a third assistant engineer as described by the plaintiff. There was no proof for the defendant that the duties were not as described by the plaintiff or that a person with a permanent condition resulting in the limitations or problems described could perform those duties.

We believe there was medical evidence from which the district court could properly conclude that the plaintiff was unable to return to his former occupation. The testimony of Dr. Skopec, the orthopedic surgeon who examined the plaintiff at the request of the defendant, does not require a different conclusion. It was Dr. Skopec's opinion that the limitations resulting from the plaintiff's injury did not disable him sufficiently to keep him from performing his job. Though he could perceive no disability in attempting to use tools, repair machinery and perform duties requiring dexterity, this witness had no familiarity with the duties of a third assistant engineer on a Great Lakes steamer. At most this testimony provided a choice to the district court between two medical opinions. The case would have been stronger if the plaintiff had produced testimony of a medical witness thoroughly familiar with the duties of his former occupation who would state unequivocally that the plaintiff was disabled from performing those duties by reason of his injury. Nevertheless, the findings of the district court are not clearly erroneous in view of the testimony of the plaintiff and of Dr. Ball, and the reasonable inferences to be drawn from Dr. Ball's testimony.

The judgment of the district court is affirmed.