52 F.3d 326
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Albert MERLINO, Plaintiff-Appellant,
v.
UNITED STATES STEEL CORPORATION, Defendant-Appellee.
 No. 93-2403.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1995.
 
 Before: LIVELY, RYAN, and DAUGHTREY, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The plaintiff, Albert Merlino, sued the defendant, USS Great Lakes Fleet, Inc.,[1] seeking personal injury damages under two causes of action: negligence under the Jones Act, 46 U.S.C. Sec. 688, and unseaworthiness under the general maritime law. Pursuant to Fed.R.Civ.P. 50(a)(1), rather than submit the case to the jury, the district court entered judgment as a matter of law against Merlino. The district court held that no reasonable trier of fact could find that the defendant's negligence or the ship's unseaworthiness caused the plaintiff's injury.
 
 
 2
 We reverse the district court's entry of judgment and remand.
 
 I.
 
 3
 Since the mid-1960s, Albert Merlino has worked aboard vessels as a seaman. On October 10, 1989, Merlino was serving as a watchman aboard the defendant's ship, the M/V EDWIN H. GOTT, while it was traveling on Lake Michigan. As the GOTT prepared to dock at Gary, Indiana, Merlino was responsible for preparing the "boatswain's chair" for the "mooring" procedure. A boatswain's or bo'sun's chair comprises: (1) a horizontally-positioned wood board used as a seat; and (2) a metal rod, referred to as a "padeye" rod, driven vertically into the wood board's center. Attached to the top of the padeye is 90-100 feet of rope; when the boatswain's chair is not in use, this rope is coiled around the padeye. When the rope is uncoiled and strung through pulleys on a boom, a seaman sitting on the wood board can be "landed," or suspended, over the ship's side. Dockworkers throw lines to the suspended seaman, and the crew can then secure the ship to the dock, or "moor" the ship.
 
 
 4
 Because of the height of the GOTT's boom, in order to thread the rope through the boom's pulleys, the watchmen normally used a wood stepstool to reach the pulleys. On the date of the injury, however, Merlino did not use the stepstool. According to Merlino, the stepstool had been broken for "a trip or two." Merlino proceeded to thread the rope through the first pulley. Merlino stands a little over six feet tall; by standing on his toes and stretching his arms over his head, Merlino reached the pulley. He pulled the rope away from the boatswain's chair and towards the vertical portion of the boom, the "kingpost." When he reached the kingpost, the rope unexpectedly stopped uncoiling. Merlino tied the rope to a "cleat" on the kingpost, and looked back at the boatswain's chair. Apparently, a "kink" in the rope prevented further uncoiling, with the result that when Merlino pulled on the rope, the kinked rope caused the boatswain's chair to be hauled up into the air until the chair stopped at the pulley.
 
 
 5
 Merlino reached up and pulled on the rope to "get the kink out," and pulled on the boatswain's chair itself, but the chair remained snarled. When asked at trial whether he had trouble reaching the boatswain's chair, he replied, "I don't think it was too bad, no, because it hangs down some, you know." According to Merlino, he next saw the third mate on the deck, and wanted to ask for help, but slipped. Merlino had let go of the chair, but his "hands [were] still there" when he suddenly "slipped." He instinctually grabbed the boatswain's chair, bringing the chair painfully down on his foot.
 
 
 6
 Merlino testified that he slipped on water, and that the part of the deck on which he slipped was no longer coated with nonskid paint--it had worn off. According to Merlino, he had no choice but to prepare the boatswain's chair in that location because he could not move the boom without permission.
 
 
 7
 The pain prevented Merlino from completing the boatswain's chair preparation, and he reported the accident to the ship's officers. Merlino continued to serve aboard the GOTT, but his foot throbbed with pain and began to change color. He left the GOTT on December 5, 1989. After undergoing foot surgery in January and August 1990, Merlino tried to resume work in 1991 and 1992; both times, the pain prevented him from performing his duties. He had trouble standing watch, lifting, and running and climbing ladders quickly during emergencies. Since July 1992, Merlino has been unable to work.
 
 
 8
 In December 1991, Merlino brought this action, alleging negligence under the Jones Act, 46 U.S.C. Sec. 688, and unseaworthiness under the general maritime law. The case went to trial on October 5, 1993. At the close of evidence on October 8, 1993, the district court granted Great Lakes Fleet's motion for a directed verdict as to both claims, holding that Merlino was the sole cause of the injury. The district court emphasized that "all [Merlino] had to do was just walk," and swivel the boom less than ten feet to an area of the deck coated with nonskid paint, and there he could have safely untangled the boatswain's chair. The district court also held that the wet deck was seaworthy and not unreasonably slippery. The plaintiff timely appealed.
 
 II.
 Standard of Review
 
 9
 When reviewing a district court's decision whether to enter judgment as a matter of law, we apply the same standard as that used by the district court. Wayne v. Village of Sebring, 36 F.3d 517, 525 (6th Cir.1994). A directed verdict is appropriate only where no reasonable juror could find for the nonmoving party, viewing the evidence in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1081 (6th Cir.1994). And specifically for Jones Act negligence claims, there appears a general aversion to directing a verdict: a directed verdict is improper unless there is a complete absence of probative facts supporting the seaman's position. Petersen v. Chesapeake & Ohio Ry., 784 F.2d 732, 740 (6th Cir.1986).
 
 III.
 Jones Act Negligence
 
 10
 Under the Jones Act, a seaman may bring a negligence action for personal injuries suffered in the course of employment. 46 U.S.C. Sec. 688(a). In addition, Sec. 688(a) provides that the statutes governing personal injury suits brought by railway employees, the Federal Employers Liability Act (FELA), 45 U.S.C. Secs. 51-60, apply to Jones Act cases. Thus, the case law that governs FELA cases also applies to Jones Act cases. See Yehia v. Rouge Steel Corp., 898 F.2d 1178, 1184 (6th Cir.1990).
 
 
 11
 In Rogers v. Missouri Pac. R.R., 352 U.S. 500 (1957), the Supreme Court set a low causal relationship as the standard in FELA cases. The railway employee in Rogers, under orders from the railroad, used a hand torch to burn weeds and vegetation growing around the tracks. Id. at 502. As a train approached, the worker stepped onto a culvert maintained by the railroad, and waited for the train to pass. However, the passing train fanned the burning vegetation, and the fire approached the worker. After raising his arm to cover his face, he retreated and stumbled off the culvert. Id. The railway worker won a jury verdict, basing his case on the railroad's order to work so close to the train, and on the slippery condition of the culvert. However, the Missouri Supreme Court reversed, finding as a matter of law that the worker's actions were the sole cause of his injuries under a proximate cause standard. Id. at 504, 506.
 
 
 12
 The Supreme Court reversed the state high court's decision, refusing to require that injured railway workers prove "proximate caus[e]" when suing under FELA. Id. at 506. Rather, under FELA
 
 
 13
 the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that ... the jury may also with reason ... attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.
 
 
 14
 Id. at 506-07 (emphases added) (footnotes omitted). This formulation of the causation standard in FELA cases has led courts to adopt a similarly lower causation standard in Jones Act cases. In Miller v. American President Lines, 989 F.2d 1450, 1463 (6th Cir.), cert. denied, 114 S.Ct. 304 (1993), we characterized the Jones Act causation standard as a "show[ing] that the defendant's negligence, however slight, contributed in some way toward causing the plaintiff's injuries."
 
 
 15
 Although a shipowner's negligent acts or omissions need only play a slight part in producing the injury, the shipowner's conduct, which may include the conduct of an injured seaman's fellow sailors, Green v. River Terminal Ry., 763 F.2d 805, 808 (6th Cir.1985), must of course still constitute "negligence," or a failure to exercise "reasonable and ordinary care," see Daughenbaugh v. Bethlehem Steel Corp., 891 F.2d 1199, 1207 (6th Cir.1989). In Burden v. Evansville Materials, Inc., 840 F.2d 343, 348 (6th Cir.1988), we affirmed a district court's finding of Jones Act negligence based on the improper storage of coiled towing cables. The seaman in Burden was ordered to move a heavy stack of coiled towing cables. Id. at 345. After moving some of the coils by dragging them off the stack, the seaman found that the next coil that he wanted to remove was entangled with the coil beneath it; a shackle attachment remained on the lower coil and entwined the two coils together. The seaman injured his back when, in an effort to untangle the two coils, he lifted the hundred-pound coil straight up. Id. We affirmed the verdict's finding of negligence, noting that "[t]he defendant might not have been under any duty to remove the shackles ..., but having elected not to do so, the defendant was arguably under a duty to take greater pains with the storage and handling of the unstripped cables." Id. at 348.
 
 
 16
 However, the court also affirmed the district court's finding that the seaman's comparative negligence was responsible for 80% of the damages. Id. at 346-48. Although assumption of the risk is not a defense to Jones Act negligence claims, a seaman's comparative negligence reduces the damages award accordingly. Id. at 346.
 
 
 17
 Shipowners also have "a duty to use reasonable care to furnish [their] employees a safe place to work." Yehia v. Rouge Steel Corp., 898 F.2d 1178, 1184 (6th Cir.1990). Again, the familiar standard of negligence requires that the shipowner use ordinary care under the circumstances to furnish and maintain a reasonably safe workplace. See id. at 1181, 1184.
 
 
 18
 We conclude that the district court erred in entering judgment as a matter of law in favor of the shipowner on the Jones Act negligence claim. A reasonable juror could find for Merlino when viewing the evidence in the light most favorable to him, concluding, first, that Great Lakes Fleet's conduct constituted negligence, or a lack of reasonable and ordinary care, and second, in light of the causation standard governing Jones Act cases, that those negligent actions played at least a slight part in producing Merlino's injury. We reiterate that our evaluation of the evidence is from the perspective of a reasonable trier of fact and in the light most favorable to the plaintiff; a jury hearing the evidence surely could find otherwise.
 
 
 19
 First, Great Lakes Fleet's negligence began with the improper storage of the rope on the boatswain's chair. Merlino testified that he had not coiled the rope on that boatswain's chair; the reasonable inference is that a fellow seaman did. Thus, the defendant's employee coiled the rope around the padeye so that, when Merlino tried to prepare the boatswain's chair, the rope became entangled. This entanglement "caused" Merlino to attempt to free the boatswain's chair.
 
 
 20
 Next, the absence of nonskid paint at that area of the deck provides the other link in the causal chain. The improperly stored rope caused the ill-fated attempt to untangle, and the absence of nonskid paint increased the likelihood that Merlino would slip on the wet deck while untangling the chair. A reasonable juror could find that the absence of nonskid paint, where it had been applied earlier and was worn away, was a failure to exercise reasonable and ordinary care because Merlino was placed in a situation where he had to untangle a suspended object without the benefit of surer footing.
 
 
 21
 A reasonable juror could conclude that the twisted rope and the worn nonskid paint, taken together, constituted negligence and played some part in producing the injury. Certainly Merlino's failure to move the boom or to request help might constitute comparative negligence--indeed, might justify a sharp reduction in the damages--but Great Lakes Fleet's conduct still played at least a slight part in producing the injury. Consequently, we think the district court erred in entering judgment as a matter of law in favor of the defendant as to the Jones Act negligence claim.
 
 IV.
 Unseaworthiness
 
 22
 The Supreme Court has repeatedly explained the distinction between Jones Act negligence and unseaworthiness actions. In Usner v. Luckenbach Overseas Corp., 400 U.S. 494 (1971), the Supreme Court clarified that
 
 
 23
 liability based upon unseaworthiness is wholly distinct from liability based upon negligence. The reason ... is that unseaworthiness is a condition, and how that condition came into being--whether by negligence or otherwise--is quite irrelevant to the owner's liability for personal injuries resulting from it.
 
 
 24
 Id. at 498 (footnote omitted). In order to be seaworthy, a vessel, its appurtenances, and its crew must be reasonably fit for their intended purpose. Id. at 499. The shipowner's duty to provide a seaworthy ship is absolute. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960).
 
 
 25
 The lack of equipment adequate to perform an assigned task can constitute an unseaworthy condition. Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1355 (5th Cir.), cert. denied, 488 U.S. 968 (1988). In Johnson, the seaman was assigned to make the bunks in the crew's sleeping areas, including the upper bunks. Without a ladder, the short seaman could not reach the upper bunks for the purpose of making them and had to climb atop and kneel upon the mattress. The seas were at four to six feet, and when the ship shifted, the seaman fell from an upper bunk. Id. at 1350. The court held that the failure to provide the ladder, and an assistant to hold the ladder during high seas, created an unseaworthy condition. See id. at 1354-55.
 
 
 26
 Not only is an unseaworthy condition distinct from a shipowner's negligence, the standards of causation differ. Unseaworthiness claims require a higher standard of causation than Jones Act negligence claims:
 
 
 27
 A plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.
 
 
 28
 Miller, 989 F.2d at 1463 (emphases added) (quoting Johnson, 845 F.2d at 1354). Although the required causal relationship is higher, a seaman is generally not precluded from recovery even if the seaman knew about the unseaworthy condition but continued to work in spite of the condition. Yehia, 898 F.2d at 1183.
 
 
 29
 A seaman may not be denied recovery because he proceeds in an unsafe area of the ship or uses an unsafe appliance in absence of a showing that there was a safe alternative available to him.
 
 
 30
 Id. (quoting Tolar v. Kinsman Marine Transit, 618 F.2d 1193, 1195 (6th Cir.1980)). Where a seaman deliberately disregards a known safe alternative, the seaman might be comparatively negligent,[2] thus justifying a reduction in damages; but assumption of the risk is not a defense to an unseaworthiness claim. Tolar, 618 F.2d at 1196. Similarly, a seaman's failure to request help when confronted with an unseaworthy condition can constitute comparative negligence, Burden, 840 F.2d at 347, but that does not necessarily bar recovery.
 
 
 31
 We conclude that the district court erred in entering judgment as a matter of law in favor of the defendant as to the unseaworthiness claim. As we discuss below, by failing to provide a safe method to prepare the boatswain's chair, Great Lakes Fleet created an unseaworthy condition. That condition played a substantial part in bringing about the injury, and the injury was a reasonably foreseeable consequence. There is no doubt that the propriety of directing a verdict presented a close question; the plaintiff's proof was often equivocal. We hold only that a reasonable juror could find for Merlino if the juror viewed the evidence in the light most favorable to Merlino and drew all reasonable inferences in Merlino's favor.
 
 
 32
 The unseaworthy condition arose from the combination of the improperly coiled boatswain's chair line and the area of the deck without nonskid paint. They rendered the vessel unseaworthy because the vessel was not reasonably fit for its intended purpose if the boatswain's chair could not be prepared for the moving process with reasonable safety. The improperly stored rope led to the boatswain chair's entanglement. On a wet deck, the plaintiff could not with reasonable safety untangle the chair without the aid of nonskid paint. Additionally, Merlino testified that the rope was old and frayed, thus increasing the likelihood of entanglement and forcing Merlino to attempt to free the boatswain's chair.
 
 
 33
 As for a break in the casual chain, only Merlino testified as to the permissibility of moving the boom to an area of the deck coated with nonskid paint; he testified that the standing orders were that the boom must be rigged at the position in which he found it. Thus, Merlino's failure to move the boom does not diminish the causal role played by the unseaworthy condition. To be sure, Merlino's failure to request permission to move the boom or to request help to untangle the boatswain's chair might constitute comparative negligence. But the frayed and improperly stored rope, and the worn nonskid paint played a substantial part in setting the stage for Merlino's slip. Furthermore, the slip was a reasonably probable consequence of the maneuver Merlino was required to execute, viz, reaching upward to free the entangled boatswain's chair while standing on a wet deck having no nonskid paint where it once was. Consequently, we conclude that a reasonable juror could have found for the plaintiff on the unseaworthiness claim.
 
 III.
 
 34
 We REVERSE the district court's entry of judgment as a matter of law as to the Jones Act negligence and unseaworthiness claims, and REMAND for proceedings consistent with this opinion.
 
 
 
 [1]
 The pleadings identified the defendant as United States Steel Corporation
 
 
 [2]
 Because unseaworthiness has no direct relation to negligence or fault, logically it is improper to reduce an unseaworthiness damages award by reference to a seaman's comparative negligence. However, this anomaly is less pronounced if we view a reduction of damages as apportioning causation rather than negligence. The jury must simply determine how much the unseaworthy condition contributed to causing the damages relative to the plaintiff's negligence