**Scott VANDEKREEKE, Plaintiff,**

v.

**USS GREAT LAKES FLEET, INC., Defendant.**

**No. 99–74447.**

United States District Court,
E.D. Michigan,
Southern Division.

April 6, 2001.

Dennis M. O'Bryan, O'Bryan, Baun, Birmingham, MI, for Plaintiff.

R. Patrick Baughman, Eileen M. Joyce, Baughman Assoc., Cleveland, OH, Paul D. Galea, Foster, Meadows, Detroit, MI, for Defendant.

*OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

BORMAN, District Judge.

There are two motions before the Court: Defendant's motion for summary judgment (Docket Entry # 15), and Plaintiff's motion for partial summary judgment (Docket Entry # 20). The Court heard oral argument on these motions on March 28, 2001. Upon consideration of the motions, the submissions of the parties, and the applicable law, the Court will GRANT IN PART and DENY IN PART both motions.

## I. BACKGROUND

The facts in this admiralty case are undisputed. Plaintiff, Scott VanDeKreeke, worked as a deckhand aboard the SS *Phillip R. Clark*, owned by Defendant, USS Great Lakes Fleet, Inc.[1] Plaintiff claims that on July 14, 1999, he was injured aboard the SS *Phillip R. Clark* when he stepped off a hatch cover onto the deck floor some two feet below and injured his knee.

Plaintiff was on top of the hatch cover because he was ordered there to help scrape, sand, and paint the ship's boom. The ship's "General Safety and Vessel Conduct" rules booklet prohibits walking on the hatches. (Exh. B to Pl.'s Resp.) Defendant provided Plaintiff with the tools needed to do the job, including a six foot step ladder placed at hatch 12. Defendant did not provide a step stool or crate that could have been used when stepping up to or down from the hatches. Defendant did not provide any instruction or training on how to negotiate the uneven working surfaces. Plaintiff did not request help in stepping off the hatch, and did not request a step stool or crate to use to step down. Plaintiff further did not make use of the six foot step ladder that was located atop the hatch when he stepped down (hatch 12).

Plaintiff stepped down from the hatch cover to the clean, dry, vessel deck, approximately two feet below. The instant his foot touched the deck, he felt a "pop" in his knee, accompanied by intense pain. He immediately sat down, for approximately 15 seconds, and then got up and resumed his work. Shortly thereafter, he reported the injury to the ship's mate. (Exh. D to Pl.'s Resp.) He detached from the ship the next day (July 15, 1999) to obtain medical treatment.

Plaintiff suffered a torn anterior cruciate ligament ("ACL"), torn meniscus cartilage in the knee, and injury to the medial femoral condyle for the articular surface of the knee. Plaintiff underwent surgery to repair the injury on August 6, 1999. Apparently the surgery achieved some success, since he resumed work as a deckhand on December 16, 1999, on the sister ship, the SS *Arthur M. Anderson*.[2]

Plaintiff filed the instant action on September 13, 1999. Plaintiff alleges causes

---

**1.** Plaintiff had previously worked aboard its sister ship, the SS *Arthur M. Anderson*.

**2.** Plaintiff worked aboard the *Anderson* from June 20–July 12, 1999, and the *Clark* on July

of action for negligence under the Jones Act, and for the admiralty-maritime common law cause of action for unseaworthiness. On December 15, 2000, Defendant filed a motion for summary judgment. Plaintiff filed a motion for partial summary judgment on January 26, 2001. These two motions are currently before the Court. As to the motion for summary judgment, the issues presented to this Court are: whether Plaintiff has sufficient evidence to withstand summary judgment on his Jones Act negligence claim; and whether Plaintiff has sufficient evidence to withstand summary judgment on his common law unseaworthiness claim. As to the motion for partial summary judgment, the issue presented to this Court is whether Defendant has sufficient evidence to withstand summary judgment on its affirmative defenses.

## II. ANALYSIS

### A. Summary Judgment Standard

This Court grants summary judgment when "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when "a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, "the mere existence of a scintilla of evidence" in support of the non-moving party is not sufficient to show a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Negligence under the Jones Act

■ A seaman injured in the course of employment, by reason of the negligence of the shipmaster, has a cause of action under the Jones Act, which provides, in relevant part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply .... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C.App. § 688(a).[3] The Jones Act is modeled after, and incorporates the law

---

13–15, 1999. He resumed work aboard the *Anderson* from Dec. 16, 1999–April 19, 2000.

3. With regard to the "jurisdiction" clause in § 688(a), neither Plaintiff's Complaint, nor any other pleadings filed in this matter, alleges where Defendant "resides" or where its "principal office is located." Plaintiff simply alleges that Defendant "conduct[s] business within this forum's boundaries." (Compl.¶ 1.) Defendant's Answer does not

clarify these issues, and simply states "Defendant does not deny that jurisdiction and venue properly lies with this Court." (Ans.¶ 1.) Regardless of whether § 688(a) is a personal jurisdiction or venue provision, this Court clearly has subject matter jurisdiction, and the Defendant has waived its personal jurisdiction challenge. Further, because neither party has challenged venue, this Court will not address this issue.

surrounding, the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* Under both the FELA and Jones Act, an employer is subject to liability if an injury results, "in whole or in part," from the employer's negligence. 45 U.S.C. § 51. "[E]ven the slightest" negligence on the employer's part in "producing the injury ... for which damages are sought" will subject the employer to liability. *See Daughenbaugh v. Bethlehem Steel Corp.,* 891 F.2d 1199, 1204 (6th Cir.1989) (quoting *Rogers v. Missouri Pacific RR Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). Negligence claims under the Jones Act are also subject to a "liberal causation analysis." *Id.* at 1207 n. 3. Thus, the plaintiff's burden in a Jones Act case is substantially lower than in a common law negligence case.

■ Furthermore, the summary judgment standard for a Jones Act negligence claim is substantially different than in a normal case—"submission of Jones Act claims to a jury requires a very low evidentiary threshold; even marginal claims are properly left for jury determination." *Id.* at 1205 (quoting *Leonard v. Exxon Corp.,* 581 F.2d 522, 524 (5th Cir.1978)). The Sixth Circuit has specifically stated its "reluctance to dispose of Jones Act claims through summary judgment," given the lightened burden on the plaintiff. *Id.* at 1207.

In the case at bar, Plaintiff alleges that Defendant was negligent by ignoring its own written safety rule prohibiting walking on hatches, when it had Plaintiff and other crewmembers proceed atop the hatches to scrape, sand, and paint the boom. Plaintiff further alleges Defendant was negligent in not providing some type of safe way to access the hatch covers and/or some type of instruction on how to do so, while the crewmembers performed this task.

Given the lightened burden on a plaintiff in a Jones Act negligence case, Plaintiff has enough evidence to get to a jury. If Defendant's failure to abide by its own written policy of disallowing crewmembers atop hatch covers played any part, no matter how small, in exposing Plaintiff to the danger of injury, this Court should not, under *Daughenbaugh,* take this claim from the jury. Defendant's arguments to the contrary are unavailing—while, admittedly, the safety policy speaks in terms of "walking on the hatches," one possible danger contemplated could be the unsafeness of stepping off the hatches. Further, had Defendant provided any type of instruction or safe option for navigating the height differential, its negligence in allowing the seamen atop the hatch covers would probably have been negated. However, Defendant did not provide any such alternative(s).

■ Plaintiff has shown a genuine issue of material fact as to whether Defendant acted negligently, and whether any alleged negligence caused Plaintiff's injury. Therefore, the Court will DENY summary judgment as to this issue.

## C. Unseaworthiness Claim under the Common Law

■ An unseaworthiness claim under maritime common law is separate from a Jones Act negligence claim. *See, e.g., Szymanski v. Columbia Transp. Co.,* 154 F.3d 591, 595 (6th Cir.1998); *see also Daughenbaugh,* 891 F.2d at 1207 n. 3 (citing *Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 774 (9th Cir.1981) (holding that a Jones Act claim was "distinct and separable" from an unseaworthiness claim)). Specifically, the salient differences between the two are "the applicable standard of liability, and the applicable standard of causation." *Szymanski,* 154 F.3d at 595.

An unseaworthiness claim is based on a shipowner's "absolute and non-delegable duty" to provide a seaworthy vessel which is "reasonably fit for [its] intended use." *Id.* (internal citations omitted). While a Jones Act claim is based on negligence, an unseaworthiness claim has no negligence element. *Id.* Further, while a Jones Act claim is analyzed under a liberal causation standard, an unseaworthiness claim is subject to "traditional proximate cause analysis." *Daughenbaugh,* 891 F.2d at 1207 n. 3.

In *Daughenbaugh,* the Sixth Circuit held that the district court did not err when it found that the plaintiff had "failed to prove that the conditions on the dock were the *proximate cause* of [the seaman's] death." *Id.* (emphasis in original). Thus, the court affirmed the grant of summary judgment as to the unseaworthiness claim.

Similarly, in the instant case, Plaintiff has failed to produce any evidence that any condition of the *Clark* was the proximate cause of Plaintiff's injury. The Plaintiff himself acknowledges that the deck onto which he stepped was dry and clear of debris. If Defendant's decision to allow the crewmembers to stand atop the hatch covers caused Plaintiff's injury, that supports a negligence claim, not an unseaworthiness of the vessel claim. If Defendant's failure to instruct and/or provide the crewmembers with safe alternatives caused Plaintiff's injury, that also supports a negligence claim, not an unseaworthiness claim. The proximate cause of Plaintiff's injury simply cannot be said to be related to any condition of the ship.

Plaintiff's unseaworthiness claim cannot withstand traditional proximate cause analysis. Thus, the Court will GRANT summary judgment as to this claim.

## D. Defendant's Affirmative Defenses

### 1. Contributory/Comparative Negligence

As noted above, the Jones Act incorporates the law surrounding the FELA. As to contributory negligence, the FELA states, in relevant part:

> In all actions on and after April 22, 1908 brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, *but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee:* Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the *violation by such common carrier of any statute enacted for the safety of employees* contributed to the injury or death of such employee.

45 U.S.C. § 53 (emphasis added). The safety rule at issue in this case is found in Defendant's safety manual—it is not a "statute enacted for the safety of employees." Plaintiff conceded this point at oral argument. Thus, there is no legal bar to an affirmative defense of contributory or comparative negligence.

The question, then, is whether Defendant has presented a genuine issue of material fact as to whether Plaintiff was contributorily negligent. Plaintiff cites several cases which found that although the defendants in those cases had termed their defense contributory negligence, it was, in all actuality, an assumption of risk argument, which is impermissible in a Jones Act case.

In *Tolar v. Kinsman Marine Transit Co.*, 618 F.2d 1193, 1196 (6th Cir.1980), the Sixth Circuit explained that a contributory negligence defense "requires evidence of some negligent act or omission by the plaintiff other than his knowledgeable acceptance of a dangerous condition." A contributory negligence defense will not lie "in the absence of a showing that there was a safe alternative available." *Id.*

In the instant case, viewing the evidence in the light most favorable to the non-moving party (which, as to this issue and this motion, is Defendant), it appears there is a genuine issue of material fact as to whether Plaintiff had a safe alternative available to him—namely, making use of the six foot step ladder provided by Defendant, which was atop the hatch from which he stepped down. Defendant will be permitted to present to the jury the theory that Plaintiff's own actions at least contributed to his injury, in order to offset Defendant's damage liability. Therefore, the Court will DENY summary judgment as to the contributory/comparative negligence affirmative defense.

### 2. *Other Affirmative Defenses*

Defendant has formally withdrawn all affirmative defenses other than contributory/comparative negligence (Aff. Def. 1, Def.'s Ans), failure to mitigate damages (Aff.Def.3), damages unrelated to injuries in this action (Aff.Def.6a), maximum benefit from medical care (Aff.Def.8), and Plaintiff's willful misconduct (Aff.Def.9). Therefore, the Court will DISMISS all other affirmative defenses.[4]

### III. ORDER

For the reasons set forth above, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment—specifically, the Court DISMISSES Plaintiff's unseaworthiness claim; his negligence claim under the Jones Act can go forward. As to Plaintiff's motion for partial summary judgment, the Court hereby GRANTS IN PART and DENIES IN PART—the affirmative defenses formally withdrawn will be stricken, and those reserved, listed *supra*, will remain for trial, including the contributory/comparative negligence affirmative defense.

SO ORDERED.

---

4. Some of the affirmative defenses are subject to being reinstated if evidence establishes that any discovery regarding Plaintiff's past medical information was not produced.